UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JENNIFER PUTNAM,<br><br>Putnam,<br><br>v.<br><br>PETE BOLL, in his official and individual capacities, and the CITY OF POCATELLO<br><br>Defendant. | Case No. 4:16-cv-00013-BLW<br><br>AMENDED MEMORANDUM DECISION AND ORDER |

The Court enters this Amended Memorandum Decision and Order to correct an error on page 4 of the decision. The earlier decision inadvertently placed the word "not" in the line regarding whether counsel provided the Court with the audio. That word has been removed in this decision. Otherwise, the decision has not been altered.

## INTRODUCTION

The Court has before it Defendants' Motion for Allowance of Attorney Fees (Dkt. 44), Plaintiff's Motion to Alter or Amend Judgment (Reconsideration) (Dkt. 45), and Defendants' Motion to Correct Oversight or Omission Re: Bill of Costs (Dkt. 49).

1.  **Motion for Reconsideration Legal Standard**

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to

dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Insurance Co.,* 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988).

Reconsideration of a court's prior ruling under Federal Rule of Civil Procedure 59(e) is appropriate "if (1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (citation omitted). If the motion to reconsider does not fall within one of these three categories, it must be denied.

A. **Claims Against Officer Boll**

Putnam argues that the Court committed clear error. Putnam suggests the Court made four errors: (1) construed facts in favor of Defendants; (2) disregarded material evidence because of a misunderstanding of the record; (3) applied an incorrect standard of law; and (4) misapplied the Supreme Court's decision in *Hartman v. Moore*, 547 U.S. 250, 262-63 (2006). The Court summarily rejects arguments 1, 3 and 4. The Court did not construe the facts in favor of Defendants, and the Court did not apply an incorrect standard of law or misapply *Hartman*. The Court understands that Putnam disagrees with the Court's application of the facts to this somewhat complicated area of the law, but the Court explained its reasoning in detail, and the Court will not reconsider it here.

Regarding the misunderstanding of the record and disregard of material evidence, the Court is somewhat frustrated with how the evidence was presented to the Court. In his affidavit in opposition to the motion for summary judgment, counsel for Putnam stated that "[a]ttached as Exhibit "g" is a true and correct copy of the audio recording of the arrest which was acquired through discovery, in both the criminal and present case." *Rammell Aff.*, ¶ 9, Dkt. 34-6. In Plaintiff's Statement of Disputed Facts in opposition to the motion for summary judgment, counsel stated that "[t]he audio recording attached as Exhibit "g" to the Affidavti of Bron Rammell supports Putnam's facts and contradicts Defendants' claims." *Plf. Statement of Disputed Facts,* p.3, Dkt. 34-1. The Court could not find a reference to the recording in Putnam's brief in opposition to summary judgment, but during oral argument counsel again suggested that the audio recording supported his arguments and contradicted the defendants' arguments. He stated to the

Court that "if you listen to the audio recording that shows what happened what really happened was Boll decided that because Putnam wasn't willing to talk to her that night because she called her attorney that that's why he arrested and charged her with stalking." Dkt. 52, p.2. A few moments later during oral argument, I explained to counsel that I had not yet listened to the recording, and asked counsel how long the recording lasted and what was discussed on it. Mr. Rammell responded that "[f]or the most part, I want to say it was pretty long. I want to say close to an hour is what you've got. You know, certainly between 30 minutes to an hour on the audio." Dkt. 52, p.5. I then asked what was said, and counsel gave his version of the events. After a bit more back and forth, counsel stated that he had given me the audiotape because he knew I was busy. Dkt. 52, p.8. There is no further reference to the audio as far as the Court can tell.

Given all of this background information, why would the Court have thought the audio "does not capture significant periods of time where Putnam and Boll had conversations that were not captured by Officer Johnson's recording," as counsel now suggests? *Plf. Reconsideration Br.,* p.3, Dkt. 45-1. If the argument now is that the recording does not capture the portions of the recording that support Putnam's allegations, why did Plaintiff's Statement of Disputed Facts state that "[t]he audio recording attached as Exhibit "g" to the Affidavit of Bron Rammell supports Putnam's facts and contradicts Defendants' claims." *Plf. Statement of Disputed Facts,* p.3, Dkt. 34-1. The audio recording does *not* support Putnam's allegations. Counsel's argument that it does misstates the evidence as the Court concluded.

Now, Putnam wants the Court to consider the audio recording as only a portion of the conversation, and fill in the missing portions with statements from Putnam's affidavit, arguing that the affidavit supports her version of events. The Court has reviewed the audio again, and there are times when nobody can be heard. But the first 10 minutes or so of the audio is a complete recording of the conversation with no breaks. During that time, Officer Boll makes clear to Putnam that he wants to get her side of the story, and that if she doesn't want to give him her side of the story he must act on the information he already has and arrest her for stalking. Putnam refuses to give her side of the story, and Officer Boll tells her she is under arrest. He then discusses options for someone to care for her children in her absence because she will be taken into custody. Putnam disputes the arrest, and threatens a lawsuit, but Officer Boll makes clear several times that she is under arrest, and again tries to discuss options for caring for her children once she is in custody. *Audio Recording,* Dkt. 34-13.

Putnam then tells Officer Boll she would like to call her attorney, and invites Officer Boll into her house. Officer Boll asks if the attorney is going to care for her children, and Putnam says she has a right to call her attorney. Officer Boll agrees, but tells Putnam she cannot usurp the process. He once again tries to get Putnam to figure out who will care for her children because she is under arrest. Putnam tries to backtrack a little by restating Officer Boll's earlier statement that she could talk to him or he would have to arrest her for stalking. Officer Boll repeats that she is, in fact, under arrest, and he reads her the *Miranda* rights. He makes very clear to her that if she is invoking her right

to an attorney that is fine, and that is the end of any questioning, but that she still needs to figure out who can care for her children while she is in custody. Putnam asks if she is going to jail that night, and Officer Boll says yes. *Audio Recording,* Dkt. 34-13.

Taking the facts in the light most favorable to Putnam, and even assuming there were some later conversations between Putnam and Officer Boll which were not recorded, Defendants are still entitled to summary judgment. Nothing in Putnam's affidavit, or any other evidence in the record, undermines what the first 10 minutes of the audio recording make clear. That is, Officer Boll asked Putnam for her side of the story, Putnam refused to give her side of the story and asked to talk to her attorney, and Officer Boll placed Putnam under arrest for stalking based upon the information he had gathered before contacting Putnam.

The Court fully explained the standard for determining whether Officer Boll is liable under these circumstances in its earlier decision. The Court will restate that somewhat complicated standard here in order to give the proper context.

If a prosecutor applies his independent judgment and makes the decision to charge an individual with a crime, that decision is an intervening cause which shields the arresting officer from liability. *Hartman v. Moore*, 547 U.S. 250, 262-63 (2006). Currently, there is some uncertainty as to how the role of a prosecutor's charging decision is to be analyzed in a § 1983 case. *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008). The Ninth Circuit originally articulated a framework in *Smiddy v. Varney*, 665 U.S. 261 (9th Cir. 1981), which began with a rebuttable presumption that prosecuting

decisions are acts of independent judgment. That presumption was rebuttable if the arresting officer "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awadby v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). Also, the presumption does not arise if the arresting officer and the prosecutor refused to divulge the relevant evidence about the independence of the prosecutor's judgment under a claim of privilege. *Smiddy*, 665 U.S. at 267-68.

The Supreme Court later issued an opinion which potentially calls into question the *Smiddy* framework. *Hartman*, 547 U.S. 250. In *Hartman*, the Supreme Court indicated that the presumption of independent prosecutorial judgment is rebutted by simply showing a lack of probable cause. *Hartman*, 547 U.S. at 250. The Ninth Circuit attempted to reconcile the *Smiddy* and *Hartman* opinions in its decision in *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008). Under the *Beck* analysis, an officer begins with the rebuttable presumption that charging decisions are the result of the independent judgment of the prosecutor. *Beck*, 527 F.3d at 870. If, however, a plaintiff can demonstrate that there was no probable cause, and can meet the extra requirements of *Smiddy*, the burden shifts to the defendant to show that the prosecutor's judgment acted as an intervening cause. *Beck*, 527 F.3d at 870. If the officer can provide sufficient evidence to show that the prosecutor's judgment was an intervening cause, the officer is shielded from liability. *Id.*

Applying this standard in its earlier decision, the Court explained that even if Putnam could carry her burden concerning probable cause, she has failed to meet her burden under *Smiddy*. First, Boll and the prosecutors have not claimed privilege for their conversations about the decision to charge Putnam. Rather, they have provided ample affidavits and depositions concerning those interactions. Therefore, Putnam is required to show that Boll "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067.

As evidence of Boll's wrongful conduct, Putnam claimed that Boll may have been motivated to falsify his report because of the following: (1) Putnam claims that Boll mentioned a HIPAA complaint while arresting her, and that he told her that if she called her attorney she was under arrest, (2) Boll had a familial connection with the Hope family, and (3) the report that Boll filed with the prosecutors was unreasonably long or contained misinformation. But Putnam's allegations are insufficient or unsupported by the evidence. Arguments 2 and 3 were addressed by the Court in its earlier decision, and they are not part of the motion to reconsider.

Regarding the audio recording, even assuming the recording does not capture later discussions between Officer Boll and Putnam, the first 10 minutes make clear that Officer Boll did not threaten to arrest Putnam if she contacted her attorney. Instead, Officer Boll arrested Putnam after Putnam failed to give him information that contradicted the

information he already gathered regarding the stalking charge. Only after she was under arrest did Putnam ask to talk to her attorney, which Officer Putnam allowed.

Thus, Putnam has failed to raise a genuine issue of material fact as to whether Officer Boll "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Therefore, Putnam has failed to meet the requirement found in *Smiddy*, and Boll retains the presumption that the prosecutors made an independent charging decision. Therefore, Boll is shielded from liability, and the motion for reconsideration will be denied.

B.      Claims Against The City Of Pocatello

Putnam acknowledges that the Court addressed the typical policy or custom test for determining municipal liability under *Monell*. Putnam suggests, however, that the Court failed to consider her other argument that "the injury was caused or ratified by an individual with 'final policy-making authority.'" *Plf. Br.,* p.8, Dkt. 45-1. For this argument, Plaintiffs cite *Chudacoff v.Univ. Med. Ctr. of So. Nev.*, 649 F.3d 1143 (9th Cir. 2011) (citing *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

But Putnam made no such argument in opposition to the motion for summary judgment. There is no reference to *Chudacoff* or *Villegas* in her response to the motion for summary judgment. Putnam explains that in her response to the motion for summary

judgment, she stated that "Prosecutor Ian Johnson was in charge of all domestic cases at the time of Putnam's arrest, including stalking charges, and was the final decision-maker on behalf of the city of Pocatello. As a final decision-maker, a one-time action can establish a policy and custom violation." *Plf. Br.,* p.9, Dkt. 45-1. But that is almost the entirety of her municipal liability argument in opposition to summary judgment. The argument consisted of barely 3 paragraphs, and only cited generally to *Monell*, with no specific page citation. Here is the entirety of Putnam's argument in opposition to the motion for summary judgment for federal municipal liability:

> Under 42 U.S.C. §1983, governmental entities cannot be held vicariously liable. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Here, it is clear that the City of Pocatello, through its prosecuting attorneys, has a custom or practice of prosecuting people like Putnam without probable cause. Prosecutor Ian Johnson was in charge of all domestic cases at the time of Putnam's arrest, including stalking charges, and was the final decision-maker on behalf of the City of Pocatello.
>
> As a final decision-maker, a one-time action can establish a policy and custom violation. *See, e.g., Monell, supra*. Putnam's 1983 claim for malicious prosecution in this instance is therefore appropriate. If Putnam's facts are to be believed, she was deprived of the constitutional right to be free from retaliatory prosecution under the First, Fourth and Fourteenth Amendments in this case. The reckless decision to prosecute Putnam without any regard or consideration to the actual evidence in her criminal case, and whether or not Putnam was reasonably believed to have stalked Hope, amounts to deliberate indifference to Putnam's constitutional rights, and supports improper motive to prosecute Putnam. Surely if Putnam's facts as alleged are taken as true, the policy of the City in this case to prosecute Putnam under the circumstances and without regard for the actual evidence, demonstrates a practice of accepting Putnam's charges without probable cause and that such practice was a moving force behind the constitutional violation.

> The City of Pocatello may be held liable to Putnam for a violation of her constitutional rights through retaliation and maliciously prosecuting her, and summary judgment is inappropriate.

*Plf. Br. In Opposition to Motion for Summary Judgment,* p.10, Dkt. 34. Putnam summed up her argument as a policy and custom argument by stating that "if Putnam's facts as alleged are taken as true, the policy of the City in this case to prosecute Putnam under the circumstances and without regard for the actual evidence, demonstrates a practice of accepting Putnam's charges without probable cause and that such practice was a moving force behind the constitutional violation." *Id.*

On summary judgment, the non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324. Notably, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

Under these circumstances, the Court rightly addressed the argument as only a policy and custom argument. To now ask the Court to reconsider its decision, and refer the Court to cases that were available to Putnam but not cited in her original brief, does not fit any of the three areas where reconsideration is appropriate: (1) the district court is presented with newly discovered evidence; (2) the district court committed clear error or

made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law." *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1100 (9th Cir. 2010) (citation omitted).

But even if the Court considers Putnam's new argument and new case citations, the city is not liable. In *Villegas v. Gilroy Garlic Festival Ass'n,* 541, F.3d, 950 (9th Cir. 2008), the Ninth Circuit explained that according to *Monell* there are three ways to prove a policy or custom of a municipality: "(1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Villegas,* 541 F.3d at 964 (Internal quotations and citation omitted).

It appears Putnam is arguing that option 2 is established here. She clearly is not arguing option 1, which the Court already addressed in its earlier decision, and she does not argue that Johnson delegated his authority or ratified someone else's decision. Putnam argues that Prosecutor Ian Johnson was the final decision-maker and that as such, a one-time action by him can establish a policy and custom violation. That one-time action is that he prosecuted Putnam without probable cause – a fact that is supported by the Idaho District Court's finding that there was no probable cause.

But the standard is not that any one wrong decision by a decision-maker automatically represents an official policy in the area of the decision. A plaintiff must show that the decision-maker was "as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision" *Id.* Johnson's decision to prosecute Putnam cannot be said to represent an official policy to prosecute individuals without probable cause. The mere fact that a Court determined there was no probable cause in Putnam's case is neither evidence of a policy of prosecuting without probable cause, nor is it evidence of a policy that amounted to a deliberate indifference to Putnam's constitutional rights. In this situation, to show a policy or custom Putnam needed to provide the Court with more evidence than a single decision by a single district court that there was no probable cause in one of the city's prosecutions of a defendant. That single decision does not show that the City of Pocatello has a policy or custom of prosecuting individuals without probable cause. Accordingly, the motion to reconsider summary judgment on the federal claim against the city will be denied.

C.  **State Claims**

The motion to reconsider is not clear about whether it is seeking reconsideration of the Court's decision on the state law claims. But to the degree it is, the Court stands by its earlier decision to grant summary judgment in favor of Defendants on those claims for the reasons stated in the Court's earlier decision.

2.  **Motion for Attorney Fees**

Pursuant to 42 U.S.C. § 1988(b), a court may award reasonable attorney fees as part of the costs to the prevailing party in an action to enforce a provision of 42 U.S.C. § 1983. *Tutor–Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1060 (9th Cir.2006); 42 U.S.C. § 1988(b). There is no dispute that Defendants are the prevailing party in this case. Where the defendant is the prevailing party in a Section 1983 case, the Court should award attorney fees only if the plaintiff's claims were "frivolous, unreasonable, or without foundation." *Id*. In determining whether this standard is met, a district court must assess the claims at the time the complaint was filed. *Id*. The Court must not simply conclude that because a plaintiff did not prevail, her action must have been unreasonable or without foundation. *Id*. The Ninth Circuit states that a case is frivolous only when the "result is obvious or the . . . arguments of error are wholly without merit." *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir.2003) (Internal quotations and citations omitted). "A case is less likely to be considered frivolous when there is very little case law directly apposite." *Id*.

Given the somewhat complicated case law regarding Putnam's most substantive claims, and the fact that a state district court had dismissed the underlying state claim against Putnam for lack of probable cause, the Court cannot find that the claims were frivolous, unreasonable, or without foundation. And even though some of the claims were dismissed based upon the statute of limitations, those claims did not significantly add to the litigation. In fact, counsel conceded dismissal of those claims once he determined that he had erred on how to calculate the statute of limitations on the federal claims arising

out of Putnam's arrest. Accordingly, the Court finds that attorney fees are not appropriate in this case.

However, as made apparent in the Court's discussion above on the motion to reconsider, the Court believes that plaintiff's counsel should have been more detail-oriented on how he presented the evidence and his arguments in this case. Many of the briefs and arguments lacked clarity, which caused opposing counsel and the Court extra work in addressing Putnam's claims. This lack of detail likely also contributed to the misunderstanding of the statute of limitations. Thus, although the Court does not find Putnam's claims to have been frivolous, unreasonable, or without foundation, the Court cautions counsel that future filings should contain more coherent and substantive arguments.

3. **Motion to Correct Bill of Costs**

Local Rule 54.1(a)(1)(B) states that a "cost bill must itemize the costs claimed and be supported by a certificate of counsel pursuant to 28 U.S.C. § 1924 that the costs are correctly stated." The Court initially denied an award the costs for deposition expenses because Defendants failed to itemize these costs. But Defendants have supplemented their cost bill with the proper itemization. Accordingly, the Court will grant Defendants the $1,848.22 in costs for depositions.

**ORDER**

**IT IS HEREBYE ORDERED:**

1. Defendants' Motion for Allowance of Attorney fees (Dkt. 44) is **DENIED**.

2. Plaintiff's Motion to Alter or Amend Judgment (Reconsideration) (Dkt. 45) is **DENIED**.

3. Defendants' Motion to Correct Oversight or Omission Re: Bill of Costs (Dkt. 49) is **GRANTED**.

DATED: November 14, 2017

_____
B. Lynn Winmill
Chief Judge
United States District Court